# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       )
                                )
      v.                    )         I.D. # 1206000145 A&B
                                )
ROBERT WORLEY,        )
                                )
      Defendant.      )

## MEMORANDUM OPINION

***Upon Defendant's Motion for Postconviction Relief – DENIED***
Submitted: February 17, 2016
Decided: March 9, 2016

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, DE, Attorney for Defendant.

Matthew Frawley, Esquire, Deputy Attorney General, Department of Justice, Wilmington, DE, Attorney for the State of Delaware.

**ROCANELLI, J.**

## I. PROCEDURAL HISTORY

Raheem Green was stabbed on April 25, 2012. Based on its investigation, the police arrested Defendant Robert Worley, and Worley was indicted in July 2012 for Assault First Degree, Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), and Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"). Counsel was appointed for Worley ("Trial Counsel").

The charges were severed. After a three-day jury trial, on April 11, 2013, the jury returned a verdict of Guilty for Assault First Degree, PDWDCF, and the Trial Court[1] returned a verdict of Guilty for PDWBPP. On April 22, 2013, Worley moved for a new trial, which was denied on May 15, 2013. On May 17, 2012, Worley was sentenced as an habitual offender pursuant to 11 *Del. C.* § 4214(a) to 55 years at Level V. Worley appealed his conviction, which was affirmed by the Delaware Supreme Court on December 9, 2013.[2]

On June 27, 2014, Worley filed a timely motion for postconviction relief as a self-represented litigant. Counsel was appointed in connection with Worley's postconviction relief motion and filed an amended motion on Worley's behalf

---

[1] The "Trial Court" references the presiding judge to whom this case was assigned for trial.
[2] *See Worley v. State*, 82 A.3d 730 (Table) (Del. 2013).

1

("PCR Motion"). The State opposes Worley's PCR Motion, and Trial Counsel

has filed an affidavit addressing trial strategy.

## II. FACTS PRESENTED AT TRIAL SUPPORTING CONVICTION

The following facts are taken from Worley's direct appeal:

On the night of the attack, Green was visiting his grandmother, whose home is adjacent to a liquor store. Green went to the liquor store to purchase lottery tickets for his grandmother and later returned to the store to purchase a bottle of water. On his second trip to the store, Green saw Worley standing in front of an abandoned building. Worley yelled at Green and called him derogatory names. Worley followed Green into the liquor store and continued to harass him. The verbal confrontation became physical but was eventually broken up. Later, Green returned to the store after realizing he was missing his phone and pocketbook. Worley entered behind him and stabbed Green in his right side, puncturing a lung.

The police investigation involved two separate photographic lineups wherein Green identified Worley as his attacker. Two other eyewitnesses also saw Worley enter the store holding a knife before the attack. One of those witnesses testified that he heard Worley say, 'I'm going to kill this faggot.' The investigation also revealed surveillance footage from inside the liquor store that depicted the altercation but did not show faces clearly. Police officers were able to watch the video on the store's monitor but unable to make a copy after several attempts.[3]

## III. CONSIDERATION OF PROCEDURAL BARS

Superior Court Criminal Rule 61 governs Worley's PCR Motion.

Postconviction relief is a "collateral remedy which provides an avenue for

---

[3] *Id.* (internal citations omitted).

upsetting judgments that have otherwise become final."[4]  To protect the finality of criminal convictions, the Court must consider the procedural requirements for relief set out under Rule 61(i) before addressing the merits of the motion.[5]

Rule 61(i)(1) bars a motion for postconviction relief if it is filed more than one year from the final judgment;[6] this bar is not applicable as Worley's first postconviction motion was timely.  Rule 61(i)(2) bars successive postconviction motions;[7] this bar is not applicable as Worley has not filed successive motions.  Rule 61(i)(3) bars relief if the motion includes claims not asserted in prior proceedings leading to the final judgment unless the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights.[8]  Rule 61(i)(4) bars relief if the motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[9]  Rules 61(i)(3) and 61(i)(4) are not applicable because Worley's claims are for ineffective assistance of counsel, which could not have been raised in Worley's direct appeal.[10]

---

[4] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[6] Super. Ct. Crim. R. 61(i)(1).
[7] Super. Ct. Crim. R. 61(i)(2).
[8] Super. Ct. Crim. R. 61(i)(3).
[9] Super. Ct. Crim. R. 61(i)(4).
[10] *See Thelemarque v. State*, No. 225, 2015, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 80 A.3d 961 (Del. 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").

3

## IV. WORLEY'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In his PCR Motion, Worley argues that Trial Counsel's performance was ineffective by failing to: (1) suppress eyewitness identifications; (2) effectively cross-examine witnesses regarding their identifications; (3) request a more detailed eyewitness identification jury instruction; and (4) consult with and present expert testimony on the subject of eyewitness identifications.

### A. Standard for Ineffective Assistance of Counsel

The Sixth Amendment guarantees defendants in criminal trials the right to counsel.[11] To assure that the outcome of a criminal trial is just, defendants furthermore have "the right to effective assistance of counsel."[12] The standard used to evaluate claims of ineffective counsel is the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*,[13] as adopted in Delaware.[14] The movant must show that (1) trial counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different.[15] Failure to prove either prong will render

---

Moreover, the State concedes in its Response to Worley's PCR Motion that Worley's claims are not procedurally barred.

[11] *Gideon v. Wainright*, 372 U.S. 335, 342-43 (1963).

[12] *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

[13] 466 U.S. 668 (1984).

[14] *See Albury v. State*, 551 A.2d 53 (Del. 1988).

[15] *Strickland*, 466 U.S. at 687.

the claim insufficient;[16] therefore, even if it can be shown that a professionally unreasonable error is made by counsel, a defendant must still show that the error had an effect on the judgment.[17] Here, the Court must look to see if there is a reasonable probability that the judgment would have been different had Trial Counsel not made the alleged errors.[18] This standard is lower than a preponderance of the evidence standard as it only needs to undermine confidence in the outcome of the trial.[19] Moreover, the Court shall dismiss entirely conclusory allegations of ineffective counsel.[20]

With respect to the first prong—the performance prong—the movant must overcome the strong presumption that counsel's conduct was professionally reasonable.[21] To satisfy the performance prong, Worley must assert specific allegations to establish that Trial Counsel acted unreasonably.[22] The United States Supreme Court has pointed to "prevailing professional norms" as the standard against which to judge the reasonableness of counsel's representation with great

---

[16] *Id.* at 688; *see also State v. McLaughlin*, 2014 WL 2964945, at *2 (Del. Super. July 2, 2014) *aff'd*, 2015 WL 1306916 (Del. Mar. 23, 2015) ("Because a defendant must show both that an attorney made a professionally unreasonable error and that the error had an effect on the judgment, failure to prove either is sufficient to defeat a claim of ineffective assistance."); *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[17] *Strickland*, 466 U.S. at 692.

[18] *Id*. at 694.

[19] *Id*.

[20] *Younger*, 580 A.2d at 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994).

[21] *Strickland*, 466 U.S. at 687–88.

[22] *Id*. at 688; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations of ineffectiveness will not suffice.").

deference given to Trial Counsel's strategic judgments.[23]  Simply because another strategy may have produced a better outcome in hindsight is not enough for a court to rule that a lawyer's performance was ineffective, given the strong presumption that the performance was adequate.[24]

With respect to the second prong—the prejudice prong—cumulative error can satisfy the prejudice prong when it undermines confidence in the verdict.[25] The movant must provide concrete allegations of prejudice, specifying the nature of the prejudice and the adverse effects actually suffered.[26]

### B. Trial Counsel's strategy was reasonable.

Worley challenges several of Trial Counsel's trial decisions; however, this Court finds that Trial Counsel made strategic decisions based on reliance on his extensive professional experience with juries such that Worley has failed to demonstrate the first prong – the performance prong – of *Strickland*.

First, Worley contends that Trial Counsel was ineffective for failing to move to suppress four out-of-court eyewitness identifications and one in-court identification.  Specifically, Worley alleges that the police used unnecessarily suggestive tactics while interviewing Green and the two witnesses and, therefore, there was a substantial likelihood of irreparable misidentification.  However, Trial

---

[23] *Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").
[24] *See id*. at 680, 689, 712.
[25] *See Starling v. State*, 2015 WL 8758197, at *14-15 (Del. Dec. 14, 2015).
[26] *Strickland*, 466 U.S. at 692; *Dawson*, 673 A.2d at 1196.

Counsel strategically chose not to move to suppress these identifications based on the high burden of proof to suppress identifications,[27] Trial Counsel's conclusion that there was a limited chance at success of suppression, and belief that he could appropriately argue the weaknesses in the identifications to the jury. The record supports Trial Counsel's conclusions and Worley has failed to demonstrate that the identifications were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[28]

Second, Worley argues that Trial Counsel failed to "probe every possible issue with each and every witness" and, therefore, Trial Counsel's cross-examinations were cursory and did not help the jury determine the witnesses' credibility.[29] Effective cross-examination is essential to a fair trial;[30] however, how

---

[27] *See Monroe v. State*, 28 A.3d 418, 431 (Del. 2011) (internal citations omitted) (holding that in determining where an identification is admissible, the trial judge applies a two-prong test:

> First, the trial judge must determine whether the pretrial identification procedure was impermissibly suggestive. That is, the trial judge must decide if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Second, if the trial judge determines that a lineup procedure is impermissibly suggestive, he or she must determine whether the identification is nonetheless reliable. To determine the reliability of the identification, the trial judge must apply the *Neil v. Biggers* totality of the circumstances test and consider: first, the opportunity of the witness to view the criminal at the time of the offense; second, the witness' degree of attention; third, the accuracy of the prior description; fourth, the level of certainty demonstrated by the witness at the confrontation; and fifth, the length of time between the crime and confrontation.).

[28] *Id.*
[29] Def.'s PCR Motion, Sep. 15, 2015, p. 82-88.
[30] *Atkinson v. State*, 778 A.2d 1058, 1062 (Del. 2001).

to cross-examine a witness is a tactical decision left to counsel.[31]  A defendant challenging counsel's decisions related to cross-examination "has the burden of supplying precisely what information 'would have been obtained had [counsel] undertaken the desired investigation' and how this information would have changed the result."[32]  Worley has failed to establish that Trial Counsel's performance fell below an objective standard of reasonableness.  Instead, Trial Counsel appropriately asked questions that called into question the credibility of Green and the two eyewitnesses, particularly with respect to their identifications. Further, to the extent that Trial Counsel did not ask questions that Worley considers probative of credibility, Trial Counsel had a reasonable strategy. Specifically, Trial Counsel's strategy was rooted in an appropriate decision to refrain from asking questions to which Trial Counsel could not have known the answer before trial and to respectfully and carefully cross-examine Green, a sympathetic victim.

Third, Worley argues that Trial Counsel was ineffective for failing to request a more detailed eyewitness identification jury instruction and cites New Jersey's instruction as a more appropriate model.  The instruction given to the jury in Worley's trial was a standard identification instruction and adequately instructed

---

[31] *See Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

[32] *Id.* (internal citations omitted).

the jury on how it should consider the witnesses' testimony.[33]  Accordingly, Trial Counsel was not ineffective when he did not request a different instruction.

Finally, Worley contends that Trial Counsel was ineffective for failing to consult with and present expert testimony on eyewitness identification.  Trial Counsel made a reasonable tactical decision to forego the use of an identification expert in order to focus his efforts on creating reasonable doubt about Worley's guilt.[34]  Moreover, assuming *arguendo* that Trial Counsel's performance was unreasonable, Worley has failed to establish prejudice under *Strickland* such that the outcome would have been different.  Importantly, Trial Counsel cross-examined the witnesses regarding the reliability of their identifications and ability to perceive Worley during the attack.

## V. CONCLUSION

Worley has failed to demonstrate that Trial Counsel was ineffective under the *Strickland* standard.  The fundamental legality, reliability, integrity and fairness of the proceedings leading to Worley's convictions and sentencing are sound.

---

[33] *Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001)(internal citations omitted)("'As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law.' And '[w]hile 'some inaccuracies and inaptness in statement are to be expected in any charge,' this Court will reverse if the alleged deficiency in the jury instructions 'undermined . . . the jury's ability to intelligently perform its duty in returning a verdict.'").

[34] *See, e.g.*, *Jackson v. State*, 770 A.2d 506, 513 (Del. 2001) (. . . "'[T]he Court concludes that counsel made a reasonable tactical decision to forgo such testing in order to focus their efforts on creating a reasonable doubt about [defendant's] guilt.'").

**NOW, THEREFORE,** on this 9th day of March 2016, Defendant Robert Worley's Motion for Postconviction Relief is hereby **DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**