Jack Foster OUTTEN, Jr., Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 34, 1998.

Supreme Court of Delaware.

Submitted: Sept. 29, 1998.
Decided: Nov. 19, 1998.

---

**31.** *See Chavin v. Cope,* Del.Supr., 243 A.2d 694    (1968).

Charles Slanina (argued), Tybout, Red-fearn & Pell, Wilmington and William W. Erhart, Wilmington, for Appellant.

Timothy J. Donovan, Jr. (argued) and William E. Molchen, Deputy Attorneys General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, C.J., and WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court En Banc.

WALSH, Justice:

In this appeal, the Appellant/Defendant-below, Jack Foster Outten, Jr. ("Outten") challenges the December 22, 1997 opinion of the Superior Court denying his amended motion for postconviction relief. Outten claims that the Superior Court erred in rejecting the merits of his claims of ineffective assistance of counsel in both the guilt and penalty phases of his trial. Outten also complains of the failure of the Superior Court to afford him an evidentiary hearing on his postconviction claim. We find no error in the Superior Court's decision and, accordingly, affirm.

## I.

Outten and his co-defendants Steven Shelton ("Shelton") and Nelson Shelton ("Nelson") were tried for the first degree felony murder of Wilson Mannon and all received a death sentence. With respect to Outten, the jury voted 7 to 5 that the aggravating circumstances outweighed the mitigating circumstances. We upheld his conviction on direct appeal. *Outten v. State*, Del.Supr., 650 A.2d 1291 (1994), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2585, 132 L.Ed.2d 834 (1995). On direct appeal Outten claimed, *inter alia*, that the Superior Court erred by failing to sever the trials. That claim was rejected. 650 A.2d at 1298.

■ Outten filed an amended motion for postconviction relief pursuant to Superior Court Criminal Rule 61. Outten's motion listed six claims of ineffective assistance of counsel: i) failure of trial counsel to move for severance at trial; ii) inadequate psychiatric investigation by trial counsel; iii) failure to adequately investigate the case prior to trial; iv) failure to investigate the availability of witnesses for the penalty hearing; v) ineffectiveness in advising Outten not to testify; and vi) failure to file a motion for new trial due to Christine Gibbons' ("Gibbons") perjury.[1]

The Superior Court by letter to counsel dated November 6, 1996, and pursuant to Superior Court Criminal Rule 61(g), determined that an expansion of the record was necessary in order to consider Outten's motion. The Superior Court indicated that the expansion could be accomplished by affidavit

---

1. Outten did not address in his briefs the last two listed claims, ineffectiveness in advising Outten not to testify and failure to file a motion for new trial. Therefore these issues have been waived. *Murphy v. State*, Del.Supr., 632 A.2d 1150, 1152 (1993). Outten filed a Second Amended Motion for Post Conviction Relief on May 21, 1996. This motion listed an additional claim regarding the voluntary intoxication instruction given to the jury. This claim also was not briefed and is deemed waived.

and requested responses to twelve questions posed to Outten's trial counsel. Trial counsel responded by affidavit a month later. The questions and responses covered the following subjects: i) the list of witnesses for the penalty hearing that Outten alleges was given to counsel and not investigated, discussions about such witnesses with Outten, and decisions made by counsel about which witnesses to produce; ii) the efforts, if any, to investigate court and school records; iii) any decision made by counsel on how to present Outten at the penalty hearing; iv) whether there was a conscious decision to sever the penalty hearing; v) whether advice was given to Outten not to testify during the guilt phase; vi) the substance of Outten's testimony had he elected to testify; vii) whether counsel were aware of the Outten phone call from the bar to his girlfriend the night of the murder; viii) whether counsel had discussed Outten's relationship with his father beyond the last year of his father's life; ix) whether there was a conscious decision not to have a psychiatric examination of Outten for use during the penalty hearing; x) what role Outten took in any of the above decisions; xi) the reasons counsel did not join in Nelson's motion to sever during trial; and xii) whether counsel was aware that Outten claimed the check he cashed that night was at a location other than that testified to by Gibbons. Both the State and Outten filed responses to trial counsel's affidavit. The Superior Court thereafter concluded that an evidentiary hearing was not warranted.

## II.

■ Outten first contends that the Superior Court's summary denial of his claims was error resulting in a denial of the "opportunity to be heard, to argue, and to present evidence that the proceedings below were fundamentally unfair." Outten claims that as a "threshold matter" the Superior Court should have permitted factual development on whether there was cause sufficient to excuse any of the alleged procedural defaults, including inquiry into "competence of coun-

sel" and the basis for trial counsel's decisions. Finally, Outten appears to argue that a postconviction evidentiary hearing should be required in all capital cases.

■ We review the Superior Court's denial of postconviction relief for abuse of discretion. *Dawson v. State*, Del.Supr., 673 A.2d 1186, 1190, 1196, *cert. denied*, —— U.S. ——, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996). Questions of law are reviewed *de novo*. *Id.* at 1190. In a postconviction proceeding, the decision whether to hold an evidentiary hearing is a determination made by the trial court. Super. Ct. Crim. R. 61(h)(1). While the decision to hold an evidentiary hearing in a postconviction proceeding is within the discretion of the Superior Court, in capital cases, holding such an evidentiary hearing should be the norm, not the exception. Nonetheless, if it appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, then summary disposition of the motion is appropriate. Super. Ct. Crim. R. 61(d)(4), (h)(3); *Maxion v. State*, Del.Supr., 686 A.2d 148, 151 (1996). Given the trial judge's extensive familiarity with the background, we are unable to conclude that he abused his discretion in determining that an evidentiary hearing was not necessary.

## III.

■ Turning to the merits of Outten's claims, we note that this Court reviews the Superior Court's denial of a motion for postconviction relief based on claims of ineffective assistance of counsel also under an abuse of discretion standard, *Dawson*, 673 A.2d at 1190, 1196, but we carefully review the record to determine whether "competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous." *Id.*

■ All of the claims asserted here, save one, are claims of ineffective assistance of counsel.[2] In order to establish such a claim the defendant has the burden of prov-

2. There is one claim that the Superior Court erred in failing to *sua sponte* sever the penalty hearing. As discussed *infra* that claim was not raised in the court below and will not be considered here.

ing that i) "counsel's representation fell below an objective standard of reasonableness," and ii) "there is a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different." *Flamer v. State*, Del.Supr., 585 A.2d 736, 753 (1990), *citing Albury v. State*, Del.Supr., 551 A.2d 53, 58 (1988) (setting forth the standard from *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The prejudice prong of the *Strickland* standard requires "attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Review of counsel's representation is subject to a strong presumption that the representation was "professionally reasonable." *Flamer*, 585 A.2d at 753. Further, a defendant "must make specific allegations of actual prejudice and substantiate them." *Wright v. State*, Del.Supr., 671 A.2d 1353, 1356, *cert. denied*, 517 U.S. 1249, 116 S.Ct. 2509, 135 L.Ed.2d 198 (1996).

## A.

■■■ Outten claims that trial counsel rendered ineffective assistance of counsel during the penalty phase by failing to make a reasonable investigation into available mitigating evidence. Outten alleges that trial counsel presented only five witnesses on his behalf, from an available list of approximately two dozen. Outten believes that the presentation of additional witnesses would have "influenced the jurors to vote for a life sentence." Outten also claims that counsel's failure to obtain his high school, Family Court and Division of Child Protective Services records also resulted in ineffective assistance of counsel. Outten argues that the records show that he was a poor student, suffered from a learning disability, led a troubled life, had difficulty relating to his frequently abusive father, was pulled out of high school in the eleventh grade, and was "a troubled youth who continually acted out in order to gain attention." Outten argues that the failure to present witnesses and these reports "prejudiced [his] results at the hearing." Outten claims that trial counsel's failure to make a reasonable investigation which resulted in counsel's failure to present such

evidence, was not counter to the portrayal of Outten as a "loving and caring individual," but would have shown that he had overcome "numerous difficulties" and "[d]espite his many problems" was capable of "change and reform."

The Superior Court found no ineffective assistance of trial counsel in the failure to call more of the allegedly available witnesses to testify. First, the Superior Court noted that trial counsel in their affidavit indicated that there was no such list of witnesses. The Superior Court then noted that Outten made a conclusory allegation that the witnesses "would influence the jurors to vote for life," but failed to identify the witnesses by name or summarize their potential testimony. Additionally the Superior Court acknowledged that presentation of the testimony had the potential to be inconsistent with the reasonable strategy chosen by trial counsel to present Outten as "loving and generous, without a history of violence," which strategy was approved by Outten.

The Superior Court extensively reviewed the Family Court, Child Protective Services and school records of Outten. The court found that the records contained both mitigating and aggravating information "which, at best, cancel each other out," and "trial counsel cannot be faulted for not investigating them," finding "[i]n all likelihood, the records would not have been used." The Superior Court noted that Outten's trial counsel made "a conscious decision about which witnesses to produce and which strategic approach to take." The Superior Court also referred to the response by counsel indicating that Outten's school records "(academics, discipline, attendance)" were discussed with Outten and his mother, after which a determination was made that nothing useful would be found. The Superior Court found that Outten failed to show that his trial counsel breached any professional standard or established any prejudice by showing that the additional evidence would have altered the jury's balancing of aggravating and mitigating circumstances.

■■■ There is a general duty on defense counsel to "investigate potentially miti-

gating evidence for use at the penalty phase." *Flamer,* 585 A.2d at 756. This duty does not demand that counsel pursue "all lines of investigation," nor does it require the presentation of all potentially mitigating evidence, or even all mitigating evidence uncovered. *Id.* That other witnesses might have been available, alone, is insufficient to prove ineffective assistance of counsel. *Id.* This Court will not "speculate on what testimony these other witnesses might have presented." *Id.* "Counsel can make reasonable choices" and focus his or her investigation on what might best convince a jury not to impose the death penalty. *Flamer,* 585 A.2d at 756. "To be reasonably competent, [counsel] need not present cumulative evidence." *Id.* Counsel's decision to present evidence "necessarily entails consideration of the negative impact" as well as any possible benefit. *DeShields v. Snyder,* D.Del., 830 F.Supp. 819, 825 (1993).

Outten has failed to satisfy either prong of the *Strickland* standard for his claims concerning the additional witnesses and reports. The conclusory allegation that "the presentation of additional witnesses ... would have influenced the jurors to vote for a life sentence," is not sufficiently specific to demonstrate actual prejudice. *Dawson,* 673 A.2d at 1196; *Palmer v. State,* Del.Supr., 645 A.2d 569, 1994 WL 202281 at **1 (May 5, 1994) (ORDER). Because Outten has failed to both identify the witnesses and indicate what their potential testimony might be, and because this Court will not speculate concerning that evidence, Outten has failed to show the actual prejudice he allegedly has suffered by his counsel's failure to investigate and present these witnesses.

Similarly, Outten's allegations regarding the failure of trial counsel to submit the school, Family Court, and Division of Child Protective Services reports fail to satisfy *Strickland's* requirements. The strategic decision of Outten's trial counsel to present mitigation evidence showing Outten as a loving and caring person does not fall below an objective standard of reasonableness. Outten's counsel presented testimony of six witnesses in support of mitigation, and Outten spoke in allocution to the jury. The record reflects that counsel made some effort to discover whether there was any useful information in Outten's school records. Additionally, information regarding his substance abuse problem, truancy trouble in school, appearances in Family Court, criminal activity, and abusive and alcoholic father came out in the testimony during the penalty phase hearing. We hold the Superior Court did not abuse its discretion in dismissing these claims.

### B.

Outten claims that his trial counsel rendered ineffective assistance of counsel "by failing to adequately pursue a psychiatric evaluation." Outten claims that his situation is analogous to that in the case of *State v. Wright,* Del.Super., 653 A.2d 288 (1994), in which the Superior Court after viewing the totality of the circumstances surrounding the legal representation at the penalty phase, ruled that the "almost complete lack of investigation into [the client's] mental, school, and family history ... in addition to [counsel's] lack of strategy in presenting mitigation evidence" constituted ineffective assistance of counsel. *Id.* at 303. Outten offers the results of a 1995 mental status examination performed by John S. O'Brien, II, M.D., J.D. ("Dr.O'Brien") as reflective of the type of mitigation evidence that he alleges should have been investigated and offered during the penalty hearing.

The Superior Court noted that Outten could not show that his counsel's performance fell below an objectively reasonable standard. Outten's counsel responded in their affidavit that based on their conversations with Outten and his mother "they saw nothing positive to pursue," and that an expert would only provide "an excuse." The Superior Court further noted that Outten "was adamant that he was not crazy or sick and did not want to be evaluated." The court also found that "delving into Outten's dysfunctional and aberrant history" in front of the jury "ran counter to a more positive approach of showing Outten as loving and caring." Therefore, the Superior Court found that Outten's trial counsel, by failing to have a mental examination and the results

presented during the penalty phase did not violate "any reasonable professional standard." The Superior Court then concluded that much of the evidence in Dr. O'Brien's report that was being offered as mitigating was already presented during the penalty hearing, and that the report offered no new mitigating evidence. Therefore, the Superior Court held that Outten had also failed to show any actual prejudice.

The *Wright* court in holding that counsel had given ineffective assistance found counsel's summation was easily interpreted as a plea for sympathy and lasted less than five minutes containing only a brief reference to his hardship as a youth. 653 A.2d at 301. In *Wright*, the penalty hearing lasted less than one hour. *Id.* at 297. The defense presented two witnesses, the defendant's mother and girlfriend. *Id.* Defense counsel in a brief summation made a plea for mercy, and referred to the defendant having been born to "an unwed mother," his poverty, his failing in school and his introduction to drugs by older children in the neighborhood. *Id.*

Outten's situation is distinguishable. First Outten's counsel stated in their affidavit to the court that the defense theory was to present Outten as "loving and generous, showing no signs of prior violent behavior." Counsel further stated that "[i]t was determined that all negatives, abusive childhood, truancy and school problems would be counterproductive." Outten was aware of the defense strategy and advised of the witnesses that would be called. Counsel further stated that both school history and mental condition were discussed with Outten and his mother and a determination was made to continue the original strategy. Counsel also stated "that an expert could have been retained to develop a mental crutch (conclusion [was] reached based on experience), however, it was determined that a consistent defense not offering excuses for Outten's actions but a continued denial was in his best interests." Lastly, counsel stated that Outten was at "all times aware of the defense strategy," "[n]o position was adopted" without first discussing it with him, and though "strongly recommended" to Outten, Outten "participated in the final decisions."

Thus it appears that the presentation of mitigating evidence at Outten's penalty hearing consisting of six witnesses plus Outten's allocution, was the result of appropriate strategic choices and did not fall below a standard of reasonable objectiveness. *See Riley v. State*, Del.Supr., 585 A.2d 719, 729 (1990), *cert. denied*, 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1008 (1991) (holding it is "within defense counsel's professional judgment to forego an investigation into defendant's mental health for the purposes of mitigation," when counsel had met with defendant on numerous occasions and prepared for trial believing defendant suffered no mental impairment, and reminding that the "strategic choices made after less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation," *citing Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052).

### C.

■ Outten next claims that trial counsel gave ineffective assistance of counsel at trial by failing to "take a position" on co-defendant Nelson's motion to sever. Outten, referring to the conflicting testimony of Gibbons, and the potential confusion of the jurors, especially during the penalty phase, as to what evidence pertains to which defendant, "demanded that counsel file a severance motion" to allow for separate trials. Outten also broadly states, without a record cite, that "the out of court statement of Nelson" was presented to the jury "implying other defendants" or "other participants" and implies by this the presence of a *Bruton*[3] issue. Finally Outten states that counsel's failure to support Nelson's motion for severance or to file his own "resulted in prejudice" to him.

The Superior Court held that the trial severance issue was adjudicated on direct appeal and reconsideration was barred pursuant to Superior Court Criminal Rule 61(i)(4). The Superior Court noted that Out-

---

3. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

ten offered no argument addressing interests of justice that would allow reconsideration, but merely implied that he wished to testify but his fear of the Sheltons prevented him from doing so in a joint trial. The Superior Court after examining Outten's claim that he was advised not to testify because of his record and the affidavit of trial counsel supplying other reasons for that advice, found that Outten had not shown that the interests of justice require reconsideration of the adjudicated claim.

▪ Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, on appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice. Super. Ct. Crim. R. 61(i)(4). Additionally, any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of the court is barred unless the movant shows cause for relief from the procedural default and prejudice. Super. Ct. Crim. R. 61(i)(3). In order to invoke the "interest of justice" provision of Rule 61(i)(4), a "movant must show that subsequent legal developments have revealed that the trial court lacked the authority to convict or punish him." *Flamer*, 585 A.2d at 746.

This Court adjudicated Outten's claim that the Superior Court erred in failing to sever the trials and ruled that there was no abuse of discretion in denying the motion. *Outten*, 650 A.2d at 1298. Our analysis specifically dealt with antagonistic defenses as a ground for severance. *Id.* Our rejection of Outten's claims on direct appeal precludes Outten from establishing prejudice by his counsel's failure to move for severance. *Skinner v. State*, Del.Supr., 607 A.2d 1170, 1173 (1992); *Dawson*, 673 A.2d at 1194. Outten has pointed to no subsequent legal developments that would justify reconsideration in the interest

of justice, and his belated attempt to insert a *Bruton* issue into the severance claim is barred.[4] The Superior Court did not abuse its discretion in dismissing Outten's claim of ineffective assistance of counsel for failure to join in or file a motion to sever the trial.

### D.

▪ Outten also claims that his trial counsel rendered ineffective assistance by failing to move to sever at the penalty phase. Outten states "[w]hether a jury which heard evidence pertaining only to Outten presented would have voted for a life sentence cannot be predicted with certainty. However, the risk they would be unable to distinguish between the defendants is so prejudicial that a new penalty hearing is necessary." Outten appears to argue that all defendants facing a potential death sentence are entitled to individualized hearings. Also, Outten, in conclusory fashion, claims that when evidence presented by one defendant is prejudicial or antagonistic to another defendant, the penalty phase should be severed. Notably, Outten fails to identify the specific evidence presented during the penalty phase by a co-defendant that was prejudicial or antagonistic to him.

The Superior Court held that, unlike the trial severance issue, Outten's trial counsel did not raise this issue on direct appeal. The Superior Court then held that the claim would be barred under Superior Court Criminal Rule 61(i)(3) unless Outten could show cause and prejudice for failure to raise it below. The court then stated that Outten could show cause if he could show that his counsel had rendered ineffective assistance. The court discussed trial counsel's affidavit responses which indicated a strategic choice to have Outten's relatively nonviolent background compared with the violent records of the Sheltons. The Superior Court found that counsels' choice of strategies was not unreasonable and therefore Outten failed to show

---

4. Not only does Outten not point to any specific testimony, but he fails to show cause why this issue was not raised below or in his direct appeal. We note that Outten's trial counsel was well aware of *Bruton* and its holding as evidenced in their affidavit answering the court's question that it was their position that "sever-

ance was not in the best interest" of Outten because the State had a statement by Nelson which corroborated *Gibbons'* testimony and implicated Outten as the murderer, which statement was not before the jury because of the State's inability to present it "due to insurmountable *Bruton* problems."

their performance as falling below an objectively reasonable standard. The Superior Court also found that Outten failed to establish prejudice by failing to show how, "but for counsel's errors, there is a probability the jury's recommendation would have differed." Finally, the Superior Court found that Outten has not shown that the hearing was "fundamentally unfair" or "unreliable."

Again, any ground for relief not asserted in the proceedings leading to the judgment of conviction is barred unless the movant shows cause for relief from the procedural default and prejudice. Super. Ct. Crim. R. 61(i)(3). This bar to relief does not apply to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction. Super. Ct. Crim. R. 61(i)(5). In *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the United States Supreme Court in a habeas action stated that the question of cause for a procedural default "does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective ... we discern no inequity in requiring him to bear the risk of attorney error that results from procedural default ... the existence of cause for a procedural default must ordinarily turn on whether the [defendant] can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." The court then gave as examples of such objective impediments: i) a showing that the factual or legal basis for a claim was not reasonably available to counsel; ii) interference by officials made compliance impractical; or iii) the default was the result of ineffective assistance of counsel. 477 U.S. at 488, 106 S.Ct. 2639; *see Younger v. State*, Del.Supr., 580 A.2d 552, 556 (1990) (holding " 'cause' for a procedural default on appeal ordinarily requires a showing of an external impediment preventing counsel from constructing or raising the claim").

Outten cannot show cause for failure to raise this claim on direct appeal. First, Outten's counsel stated that, strategically, they never "contemplated" and in "no way would have considered" a separate penalty hearing because "[t]he Shelton's [sic] were Robbers and Rapists with a history of violence," and in a separate penalty hearing the jury would never have heard "about the brutal past" of the Sheltons. Comparison of the Sheltons to Outten, they believed would place Outten "in much better light to the jury." The factual and legal basis for a claim of severance was available, but never contemplated by Outten's counsel. Outten's trial counsel's strategic choice was not unreasonable and did not fall below an objectively reasonable professional standard. Additionally, Outten has failed to point to any actual prejudice. Therefore Outten's claim must fail for failure to show cause and actual prejudice as required under Superior Court Criminal Rule 61(i)(3).

■ Outten's latest severance claim can be saved only if it implicates a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of his trial proceedings. Super. Ct. Crim. R. 61(i)(5). The "fundamental fairness exception" is narrow and "has been applied only in limited circumstances, such as when the right relied upon has been recognized for the first time after the direct appeal." *Maxion*, 686 A.2d at 150, *citing Younger*, 580 A.2d at 555. Whether a Rule 61 motion states a colorable claim is a question of law and will be reviewed *de novo*. *Webster v. State*, Del.Supr., 604 A.2d 1364, 1366 (1992).

■ A trial judge should grant a severance under Superior Court Criminal Rule 14 "only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Manley v. State*, Del.Supr., 709 A.2d 643, 653, *cert. denied*, —— U.S. ——, 119 S.Ct. 214, —— L.Ed.2d —— (1998). The issue of severance during the penalty phase follows the same analytical lines. For example, in *Foster v. Kentucky*, Ky.Supr., 827 S.W.2d 670 (1991), *cert. denied*, 506 U.S. 921,

113 S.Ct. 337, 121 L.Ed.2d 254 (1992), the court held that the trial court's denial of motions to sever during the guilt phase based on antagonistic defenses was not an abuse of discretion, but found the introduction of evidence during the penalty phase in support of a duress claim to be highly prejudicial, and therefore the trial court erred in deciding not to sever the penalty phase. 827 S.W.2d at 679–80, 681–83.

■■■ It is not sufficient to simply argue, as Outten does here, that joint penalty hearings involving multiple defendants violate the right to individualized sentencing. It must be demonstrated that such hearings preclude a jury from "render[ing] an individualized sentencing decision" as to each defendant. *Illinois v. Mahaffey*, Ill.Supr., 165 Ill.2d 445, 209 Ill.Dec. 246, 651 N.E.2d 174, 187, *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995). *See also Puiatti v. Dugger*, Fla.Supr., 589 So.2d 231, 234–35 (1991). Outten has made no such showing here. Because his severance claim does not rise to the level necessary for such relief under Rule 61(i)(5), it was properly rejected.

### E.

■■■ Outten next claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated by the Superior Court's failure to sever, *sua sponte*, the penalty hearings. Outten claims that he was prejudiced by association from the State's presentation against the Sheltons. The Superior Court did not separately address this issue because it was not raised in Outten's motion or amended motion for post-conviction relief. Because his issue was not fairly presented below, and for the reasons discussed in the preceding section, the interest of justice does not require this Court to consider it here. Supr. Ct. R. 8. It is sufficient to note that Outten's trial counsel reasonably believed that Outten would benefit, on a comparative basis, in being evaluated for punishment along with the Sheltons.

### F.

■■■ Outten's final claim concerns ineffective assistance of counsel during the guilt phase of his trial. Specifically Outten claims that his counsel i) failed to properly investigate his claim that a check was cashed at a location different from the one testified to by Gibbons, ii) failed to interview barmaids at a bar who Outten claims would testify that he was at a pay phone away from Gibbons and the Sheltons, and iii) failed to interview his girlfriend to support his contention that "he was apart from [the Sheltons] and that he wanted a ride home, rather than intending to accompany and assist the perpetrators of the murder." Outten further claims that due to his counsel's lack of preparation and investigation he was unable to meet or answer the "perjured testimony" of Gibbons.

The Superior Court examined these claims of Outten in detail. The Superior Court found location of the check cashing to be insignificant. The court further found that Outten failed to name the other barmaid witnesses, and that the barmaid claim lacked merit based on the testimony of a barmaid who did testify. Finally the court noted that Outten's girlfriend testified about the phone call. The Superior Court held that Outten could not show his counsel's performance was deficient, and that because the points he wanted "made to the jury were made" he failed on the prejudice prong as well.

■■■ Whether to call a witness, and how to cross-examine those who are called are tactical decisions. *See, e.g., United States v. Lively*, D.Del., 817 F.Supp. 453, 462, *aff'd*, 3d Cir., 14 F.3d 50 (1993). A defendant challenging such decisions has the burden of supplying precisely what information "would have been obtained had [counsel] undertaken the desired investigation" and how this information would have changed the result. *United States v. Rodriguez*, 7th Cir., 53 F.3d 1439, 1449 (1995). The defendant must "substantiate his concrete allegations of actual prejudice or else risk summary dismissal." *Boughner v. State*, Del.Supr., 667 A.2d 1318, 1995 WL 466465 at **1 (Aug. 2, 1995) (ORDER).

Outten has failed to substantiate his allegations of actual prejudice and has failed to

demonstrate that his counsel's cross-examination of Gibbons fell below an objectively reasonable standard. The Superior Court did not abuse its discretion in denying Outten's postconviction claim for ineffective assistance of counsel during the guilt phase of his trial.

The judgment of the Superior Court is AFFIRMED.